# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JUAN L. PERRY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:21-cv-00461 |
| STATE OF TENNESSEE, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Juan L. Perry, an inmate of the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee, has filed a pro se Complaint for violation of civil rights under 42 U.S.C. § 1983. (Doc. No. 1). After his original application for leave to proceed in forma pauperis (IFP) was denied (see Doc. No. 5), Plaintiff filed an amended application. (Doc. No. 8).

The case is before the Court for ruling on the Plaintiff's amended IFP application and initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## I. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because Plaintiff's amended IFP application complies with the statutory requirements and demonstrates that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 8) will be granted by separate Order.

## II. INITIAL REVIEW

### A. PLRA Screening Standard

The Court must conduct an initial review and dismiss the Complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e. Review of the Complaint to determine whether it states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Applying this standard, the Court must view the Complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014).

**C. Allegations and Claims**

Plaintiff alleges that, on February 23, 2021, he was trying to exit his cell in TTCC's Echo-Alpha Unit when Officer Bangura opened the cell door to remove the window cover. (Doc. No. 1 at 3). Bangura told Plaintiff he could not exit the cell and tried to slam the door, but Plaintiff was already in the doorway. Although Plaintiff was not combative in any way, Bangura sprayed him with MK9 spray. (Id.). Plaintiff was then escorted to disciplinary segregation in Alpha-Charlie Unit and placed in a cell that was filthy. (Id.). Later that night, when Plaintiff was interviewed by investigators, he was informed that, "per Warden Byrd, [TTCC] has impl[e]mented a new policy: that no matter what the situation is, spray them." (Id.).

Plaintiff was returned to his cell in segregation after this interview, still wearing clothes "soaked in MK9 spray and blood," and another inmate who had been beaten and sprayed was placed there with him. (Id.). Plaintiff and the other inmate requested "basic needs," but those requests were not answered. (Id.). Plaintiff alleges that the lights in the cell do not work; that it was not until day 5 that he was provided a mat to sleep on, though he was not provided with bedding or a blanket; that he was not allowed to shower until day 17; and that he has yet to receive

3

his personal property from his previous cell. (Id. at 3–4). Plaintiff alleges that Lt. Hill instructed that he not be provided with anything in his new cell, and that Lt. Hill responded to Plaintiff's inquiry about his personal property by suggesting that "sometimes property just disappears." (Id. at 4).

As a result of the incident in the doorway of his cell, Plaintiff received "30 [days] punitive time" and an increase in his custody level, to "close" custody. (Id.). But even after his punitive time expired, Plaintiff was not moved out of segregation and did not receive the privileges that normally are provided to close custody inmates, such as access to electrical power, cable television, and the telephone, as well as the ability to order food from the commissary. (Id.). He further alleges that Lt. Hill dictates that segregated inmates remain in their cells for 24 hours, that he has not been out to recreation in over 30 days, and that he has only been given recreation 6 times since February 23. (Id.).

Plaintiff claims that Officer Bangura used excessive force against him, pursuant to Warden Byrd's new policy but in violation of published prison policy, and that ever since that incident he has been subjected to inhumane conditions of confinement in violation of his Eighth Amendment rights. (Id. at 3, 5). He seeks damages against Officer Bangura in his individual capacity and Lt. Hill in his official capacity, for "being sprayed and beat[e]n by staff members, which was a direct endangerment to his health," as well as for "be[ing] subjected to misery, mental anguish, physical and mental pain, emotional harm, and psychological stress and trauma." (Id. at 5–6). Plaintiff further claims that the State of Tennessee and Core Civic are liable for the actions of Bangura and Hill because those entities provide training to their employees and the failure properly to do so "evidences . . . a 'deliberate indifference' to the pro se plaintiff's rights, in that this shortcoming is properly thought of as a policy or custom that is actionable." (Id. at 4). He sues Warden Byrd and

4

Contract Monitor Braun as the officers in charge of TTCC (id. at 1–2) and claims that all Defendants are jointly liable for his damages. (Id. at 5–6).

**D. Analysis**

1. Excessive Force

Plaintiff's claim against Bangura arises under the Eighth Amendment's Cruel and Unusual Punishments Clause, which prohibits the use of excessive force against convicted inmates. The "core judicial inquiry" in considering such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). In addition to this subjective inquiry, there is also an objective component to Eighth Amendment excessive-force claims, which requires the pain inflicted to be sufficiently serious. Cordell v. McKinney, 759 F.3d 573, 580 (6th Cir. 2014) (quoting Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011)). However, the Court may not apply a "de minimis injury" test to such claims, as "the judicial inquiry should focus on 'the nature of the force rather than the extent of the injury.'" Williams, 631 F.3d at 384 (quoting Wilkins, 559 U.S. at 34).

Presuming the truth of Plaintiff's allegations that Bangura deployed sufficient MK9 spray to soak his clothes, simply because Plaintiff was in the doorway of his cell when Bangura attempted to close the door and not because Plaintiff was combative or disorderly, and construing in his favor the allegations that he was beaten and that his clothes were partly soaked in blood, the Court finds that the serious nature of the force, the maliciousness of its application, and the seriousness of the resulting injury are colorably established for purposes of initial review. See Parsons v. City of New York, No. 17-CV-2707 (MKB), 2017 WL 2656135, at *3 (E.D.N.Y. June 19, 2017) (finding elements of excessive-force claim plausibly alleged where guard used mace

against compliant prisoner; "the subjective element is satisfied in such cases because spraying a compliant prisoner with mace cannot be characterized as an attempt to maintain or restore discipline, and the objective element is satisfied where a prisoner alleges that he suffered injuries beyond the immediate discomfort that results from being sprayed with mace") (citing cases). Further factual development may reveal otherwise and may even vindicate the level of force used by Bangura. But at this early stage, Plaintiff's allegations are sufficient to allow his excessive-force claim against Bangura to proceed.

### 2. Inhumane Conditions of Confinement

Plaintiff alleges that, after his move to a cell in segregation and as a result of Lt. Hill's directive that nothing be provided to him, Plaintiff did not receive bedding or a blanket, was not allowed to shower until 17 days later, and did not receive his personal property from his previous cell. (Doc. No. 1 at 3–4). Plaintiff alleges that he was not moved out of segregation after his 30-day disciplinary sentence expired, and that he therefore continued to be denied privileges that non-segregated inmates are afforded, such as access to electrical power, cable television, and the phone, as well as the ability to order food from the commissary. (Id. at 4). He further alleges that, per the dictates of Lt. Hill, the segregated inmates of Alpha Unit are "forced to do 24 hours in the cell" and are denied regular recreation. (Id.). As of the filing of his Complaint, Plaintiff had not been allowed "out to recreation in over 30+ days and counting." (Id.).

To establish a plausible right to relief from inhumane conditions of confinement, a prisoner must allege "a sufficiently serious deprivation and prison officials' deliberate indifference to the prisoner's health or safety." Evans v. Vinson, 427 F. App'x 437, 443 (6th Cir. 2011) (citing Spencer v. Bouchard, 449 F.3d 721, 728 (6th Cir. 2006)). To be sufficiently serious, the alleged deprivation must "result in the denial of the minimal civilized measure of life's necessities." Id.

6

"The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation." Dean v. Campbell, No. 1:16-CV-700, 2016 WL 5349075, at *5 (W.D. Mich. Sept. 26, 2016) (citing Evans, 427 F. App'x at 443, and Harden-Bey v. Rutter, 524 F.3d 789, 795 (6th Cir. 2008)).

Although Plaintiff's allegations otherwise fail to support a finding that he has been denied basic human needs, see Barnes v. Cnty. of Monroe, 85 F. Supp. 3d 696, 738 (W.D.N.Y. 2015) (noting that "[e]ven a two-week suspension of shower privileges does not constitute a denial of basic hygienic needs") (citation and internal quotation marks omitted); cf. Gonzalez v. Mullen, No. C 09-00953 CW (PR), 2010 WL 1957376, at *3 (N.D. Cal. May 14, 2010) (citing cases for proposition that deprivation of cable television, telephone, property, access to commissary, etc. do not pose atypical and significant hardship on inmates), the Court finds for purposes of initial review that the prolonged denial of recreation outside his cell is a sufficiently serious deprivation to support a plausible Eighth Amendment claim. See Harris v. Erdos, No. 1:20-CV-120, 2020 WL 1331927, at *3 (S.D. Ohio Mar. 23, 2020), report and recommendation adopted, 2021 WL 1115347 (S.D. Ohio Mar. 24, 2021) (allowing claim of prolonged denial of recreation to proceed past initial screening) (citing Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983)). The Sixth Circuit in Patterson reversed the summary dismissal of an Eighth Amendment claim based on "denial, without penological justification, of out-of-cell exercise during [the plaintiff's] 46-day tenure at [the prison]," noting that "a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees . . . [because] [i]nmates require regular exercise to maintain reasonably good physical and psychological health." 717 F.2d at 289; see also Vick v. Core Civic, 329 F. Supp. 3d 426, 452 (M.D. Tenn. 2018) (noting that "in

7

Rodgers v. Jabe, 43 F.3d 1082, 1087–1088 (6th Cir. 1995), the [Sixth Circuit] strongly suggests that five hours [of recreation] a week is the constitutional minimum"). Plaintiff's allegation that Lt. Hill has dictated a similarly prolonged, unjustified denial of exercise or recreational opportunity is sufficient to support a plausible claim of deliberate indifference to Plaintiff's health. This claim against Lt. Hill will proceed for further development.

However, Plaintiff's claim against Contract Monitor Braun will be dismissed. Other than naming Braun as a Defendant in the Complaint's caption and alleging that he "was the duly appointed, and acting executive officer in charge of [TTCC]" (Doc. No. 1 at 1–2), Plaintiff makes no allegations of wrongdoing against Braun. The Court cannot reasonably infer from the allegation that Braun is "in charge" that he is liable for Plaintiff's harm; a supervisor cannot be held liable simply because he failed to act, or because he "was charged with overseeing a subordinate who violated the constitutional rights of another." Peatross v. City of Memphis, 818 F.3d 233, 241 (6th Cir. 2016) (citing Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir. 2006)). Rather, "[p]ersonal involvement is necessary to establish section 1983 liability." Murphy v. Grenier, 406 F. App'x 972, 974 (6th Cir. 2011) (citing Gibson v. Matthews, 926 F.2d 532, 535 (6th Cir. 1991)). In the absence of any allegation that he was personally involved in the misconduct alleged in the Complaint, Defendant Braun must be dismissed from this action. See Green v. Correct Care Sols., No. 3:14-cv-01070, 2014 WL 1806997, at *4 (M.D. Tenn. May 7, 2014) (citing cases) ("It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal as to that defendant, even under the liberal construction afforded to pro se complaints.").

### 3. Official-Capacity Claims

While Plaintiff does not specify the capacity in which he sues the TTCC Warden, he claims damages based on Bangura's execution of a "new policy" implemented at TTCC "per Warden Byrd," to use chemical spray against inmates "no matter what the situation is." (Doc. No. 1 at 3). This is a claim that "implicate[s] the conduct of a defendant supervisor insofar as he acted with deliberate indifference in his official capacity as a policymaker." Essex v. Cnty. of Livingston, 518 F. App'x 351, 355 (6th Cir. 2013).

"[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Assuming that Warden Byrd is employed by Core Civic,[1] the private entity that contracts with the State of Tennessee to staff and manage TTCC,[2] the official-capacity claim against him is redundant and subject to dismissal because Core Civic is also named as a Defendant in this action. See Sexton v. Lindamood, No. 1:16-CV-00071, 2019 WL 923787, at *13 (M.D. Tenn. Feb. 7, 2019), report and recommendation adopted, No. 1:16-CV-00071, 2019 WL 914135 (M.D. Tenn. Feb. 25, 2019). If instead "the Warden is a state employee, . . . 'neither a State nor its officials acting in their official capacities are 'persons' [subject to suit for damages] under § 1983.'" Hollis v. Erdos, 480 F. Supp. 3d 823, 836 (S.D. Ohio 2020) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)).[3] Accordingly, regardless of the entity he represents, Warden Byrd must be dismissed as a Defendant to this action.

---

[1] See https://jobs.corecivic.com/page/show/warden-byrd-spotlight (last visited September 30, 2021).

[2] See Shallenberger v. CoreCivic - Trousdale Turner Corr. Ctr., No. 3:19-cv-00900, 2020 WL 869984, at *3 & n.1 (M.D. Tenn. Feb 21, 2020) (taking judicial notice that "[t]he Tennessee Department of Correction website reflects that CoreCivic is a private entity that manages the TTCC").

[3] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the

9

Plaintiff explicitly designates his claim against Lt. Hill as an official-capacity claim. While this claim may also prove to be redundant of Plaintiff's claim against Lt. Hill's employer, Core Civic (see Doc. No. 1 at 2), the Court will not dismiss Lt. Hill from the action at this initial stage, as the allegations against him at least suggest a personal-capacity claim for "[mis]conduct on the supervisor's part"—apart from any execution of Core Civic policy—"that is directly correlated with the plaintiff's injury." Essex, 518 F. App'x at 355. As the case progresses, the course of proceedings will indicate whether Plaintiff seeks to also impose personal liability on Lt. Hill. See Kentucky, 473 U.S. at 167 n.14 (noting that in cases where the complaint does not clearly specify whether officials are sued in both their personal and official capacity, "'[t]he course of proceedings' . . . typically will indicate the nature of the liability sought to be imposed") (quoting Brandon v. Holt, 469 U.S. 464, 469 (1985)).

### 4. Claims Against Core Civic and the State of Tennessee

There is no question that Core Civic is a state actor for purposes of Section 1983 because it performs the traditional state function of operating a prison. Street v. Corrs. Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996). The standards for assessing municipal liability are applied to claims against private corporations that operate prisons. Ogbeiwi v. CoreCivic Am., No. 1:20-cv-01094-STA-cgc, 2021 WL 2144326, at *2 (W.D. Tenn. May 26, 2021) (citing Thomas v. Coble, 55 F. App'x 748, 748–49 (6th Cir. 2003)). Consistent with those standards, Core Civic cannot be held liable under a theory of *respondeat superior* or vicarious liability, but only upon a showing that a corporate policy or custom "was the moving force behind the deprivation of the plaintiff's rights." See Savoie v. Martin, 673 F.3d 488, 494 (6th Cir. 2012) (quoting Miller v. Sanilac Cnty., 606 F.3d 240, 255 (6th Cir. 2010)).

---

State." Will, 491 U.S. 71 n.10 (citation and internal quotation marks omitted). Plaintiff does not sue for injunctive relief.

Core Civic cannot be vicariously liable for Officer Bangura's "actions in an individual capacity." (Id. at 4). However, liberally construed, Plaintiff's allegation that Core Civic's policymaker at TTCC, Warden Byrd, implemented a policy of using chemical spray in inmate encounters regardless of whether the inmate is "combative in any way" (Doc. No. 1 at 3) is sufficient to allow the claim against the corporation to proceed.

The assertion of Core Civic's liability under a theory that, as a matter of policy or custom, it failed to provide adequate training to supervisors including Lt. Hill (id. at 4) requires Plaintiff to establish that Core Civic failed to train with respect to the management of segregated inmates "despite: 1) having actual or constructive knowledge of a pattern of similar constitutional violations by untrained employees; or 2) the fact that the constitutional violation alleged was a patently obvious and highly predictable consequence of inadequate training." Essex, 518 F. App'x at 355–56 (citations and internal quotation marks omitted). Plaintiff does not allege facts from which the Court could reasonably infer Core Civic's knowledge of a pattern of its supervisors depriving segregated inmates of nearly all opportunity for out-of-cell exercise or recreation. However, at least for purposes of initial review, the deprivation of such recreation opportunities for more than 30 days may be reasonably inferred to be the obvious result of inadequate training concerning the right of inmates (even those in disciplinary housing) to some level of recreation outside their cells. This failure-to-train claim against Core Civic will also proceed for further development.

However, the claim against the State of Tennessee must be dismissed. As mentioned above, the State is not subject to suit under Section 1983, Will, 491 U.S. at 71, and even if it were, it could not be sued under Section 1983 in federal court because of its sovereign immunity under the

Eleventh Amendment. Kentucky, 473 U.S. at 167 & n.14; Pennhurst State Schl. & Hosp. v. Halderman, 465 U.S. 89, 98–100 (1984).

### III. CONCLUSION

As explained above, the Court finds that the Complaint states nonfrivolous claims against Defendants Bangura, Hill, and Core Civic. These claims will proceed for further development, while all other claims and Defendants will be dismissed.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR
CHIEF UNITED STATES DISTRICT JUDGE