**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| JUAN L. PERRY,  )  Plaintiff,  )  )  v.  )  )  STATE OF TENNESSEE, et al.,  )  Defendants.  ) | Civil Action No. 3:21-cv-00461  Chief Judge Crenshaw / Frensley |

**REPORT AND RECOMMENDATION**

## I.  INTRODUCTION

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket No. 27. Along with their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law, a Statement of Undisputed Material Facts, and the Declarations of Raymond Byrd, Emond Hill, and Elizabeth Lopez. Docket Nos. 28-32. Plaintiff has filed a Response to Defendants' Motion. Docket No. 38. Defendant filed a Reply. Docket No. 39.

## II.  BACKGROUND

Plaintiff is a prisoner of the State of Tennessee, who, at all times relevant to the instant action, was incarcerated at the Trousdale Turner Correctional Center ("Trousdale"). Docket No. 1. Plaintiff filed this pro se action pursuant to 42 U.S.C. §1983, arguing that Defendants violated his Eighth Amendment rights. *Id.* Specifically, Plaintiff avers that on February 23, 2021, he was trying to exit his cell in Trousdale's Echo-Alpha Unit when Officer Bangura opened the cell door to remove the window cover. *Id.* at 3. Officer Bangura told Plaintiff he could not exit the cell and tried to slam the door, but Plaintiff was already in the doorway. *Id.* Although Plaintiff was not combative in any way, Officer Bangura sprayed him with MK9 spray. *Id.* Plaintiff was then escorted to disciplinary segregation in Alpha-Charlie Unit and placed in a cell that was filthy. *Id.*

Later that night, when Plaintiff was interviewed by investigators, he was informed that, "per Warden Byrd, [Trousdale] has impl[e]mented a new policy: that no matter what the situation is, spray them." *Id*. Plaintiff was returned to his cell in segregation after this interview, still wearing clothes "soaked in MK9 spray and blood," and another inmate who had been beaten and sprayed was placed there with him. *Id*. Plaintiff and the other inmate requested "basic needs," but those requests were not answered. *Id*. Plaintiff avers that the lights in the cell did not work; that it was not until day five that he was provided a mat to sleep on, though he was not provided with bedding or a blanket; that he was not allowed to shower until day seventeen; and that he has yet to receive his personal property from his previous cell. *Id*. at 3–4.

Plaintiff alleges that Lt. Hill instructed that he not be provided with anything in his new cell, and that Lt. Hill responded to Plaintiff's inquiry about his personal property by suggesting that "sometimes property just disappears." *Id*. at 4. As a result of the incident in the doorway of his cell, Plaintiff received "30 [days] punitive time" and an increase in his custody level, to "close" custody. *Id*. But even after his punitive time expired, Plaintiff was not moved out of segregation and did not receive the privileges that normally are provided to close custody inmates, such as access to electrical power, cable television, and the telephone, as well as the ability to order food from the commissary. *Id*. He further alleges that Lt. Hill dictated that segregated inmates remain in their cells for twenty-four hours, that he has not been out to recreation in over thirty days, and that he has only been given recreation six times since February 23rd. *Id*.

Plaintiff claims that Officer Bangura used excessive force against him, pursuant to Warden Byrd's new policy but in violation of published prison policy, and that ever since that incident he has been subjected to inhumane conditions of confinement in violation of his Eighth Amendment rights. *Id*. at 3, 5. He seeks damages against Officer Bangura in his individual capacity and Lt. Hill

in his official capacity, for "being sprayed and beat[e]n by staff members, which was a direct endangerment to his health," as well as for "be[ing] subjected to misery, mental anguish, physical and mental pain, emotional harm, and psychological stress and trauma." *Id*. at 5–6.

Plaintiff further claims that the State of Tennessee and CoreCivic are liable for the actions of Officer Bangura and Lt. Hill because those entities provide training to their employees and the failure properly to do so "evidences . . . a 'deliberate indifference' to the pro se plaintiff's rights, in that this shortcoming is properly thought of as a policy or custom that is actionable." *Id*. at 4. He also sued Warden Byrd and Contract Monitor Braun as the officers in charge of Trousdale (*Id*. at 1–2) and claims that all Defendants are jointly liable for his damages (*Id*. at 5–6).[1]

Plaintiff seeks $100,000 in damages, plus costs, fees, and any other relief the Court deems reasonable. *Id*.

### III. SUMMARY OF ARGUMENT

As grounds for their Motion, Defendants argue that they are entitled to a judgment as a matter of law because: (1) Plaintiff has failed to exhaust his administrative remedies, as required under the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff cannot sustain his Eighth Amendment vicarious liability claim against CoreCivic because the undisputed facts establish that Warden Byrd did not implement a policy or custom that violated Plaintiff's constitutional rights; (3) Plaintiff cannot sustain his Eighth Amendment failure to train claim against CoreCivic because the undisputed facts establish that CoreCivic maintains a robust training program that involves training, *inter alia*, on the rights of inmates and the management of recreational opportunities; and (4) Plaintiff did not suffer a physical injury that was more than *de minimis*, as required under the

---

[1] Plaintiff's claims against the State of Tennessee, Warden Byrd, and Contract Monitor Braun were dismissed during this Court's initial frivolity review; accordingly, they are no longer parties to this action. *See* Docket Nos. 9, 10.

3

PLRA, such that the cannot sustain his Eighth Amendment claims. Docket No. 27. Defendants argue that their Motion should therefore be granted, and this action should be dismissed with prejudice. *Id.*

In his Response to the motions, Plaintiff argues that the facility "has made it a practice and known policy to deny the inmate population with their due process." *Id.* Regarding exhaustion, Plaintiff argues that he "submitted a few documents" but contends that the "'7' day grievance policy is never followed." *Id.* In particular, Plaintiff argues that he filled out two grievances, but did not receive a response. *Id.* Addressing injury, Plaintiff argues that "being sprayed point blank range in the face with the MK9 burst" constitutes a "maliciously and sadistically [*sic*] use of force" by Officer Bangura. *Id.* Plaintiff further argues that "there is no merit to Defendants' assertion that a significant injury requirement is mandated." *Id.*

Plaintiff further argues that the facility "has a practice and known policy to deny all inmates of proper recreation opportunity." *Id.* Specifically, Plaintiff argues that when they get recreation time, they get two hours per week, rather than the "constitutional minimum" of five hours, but that, due to lack of staffing, there were times where months would pass "without going out at all." *Id.* Plaintiff asserts that the lack of recreational time took a toll on his mental health, and further asserts that he discussed this with "the Mental Health Dr." *Id.*

Finally, Plaintiff contends, "I was placed into a very inhumane situation. Being stuck in the cell for months at a time without any recreation at all. No cleaning supplies, and no property for over 18 days. No change of clothes, and I am covered in MK9 spray. No mat, no bed roll, just in a dirty cell. It was never cleaned out from the last inmate who stayed there." *Id*.

Plaintiff has not filed a Response to Defendants' Statement of Undisputed Material Facts. Nor has Plaintiff filed his own Statement of Undisputed Material Facts.

Defendants have filed a Reply to Plaintiff's Response, arguing that, despite clear instructions from the Court, Plaintiff failed to respond to their Statement of Undisputed Material Facts, as required by Fed. R. Civ. P. 56(c) and Local Rules 56.01(c), (f), such that their facts are undisputed for purposes of summary judgment. Docket No. 39. Specifically, Defendants note that this Court warned Plaintiff that he must respond and that "failure to respond to the motion and to statements of facts may result in the Court taking the facts alleged in the matter as true and granting the relief requested." *Id., quoting* Docket No. 23. Defendants further note that the Court continued, "In responding to the motions for summary judgment, plaintiff may not just rely on the complaint. Plaintiff must show there is a material dispute of fact with citations to the record, affidavits or other matter of evidence. Plaintiff should read and comply with Federal Rule of Civil Procedure 56 and Local Rule 56.01." *Id.* Defendants argue that, with the facts undisputed, the Court should grant their Motion because their materials establish the absence of a genuine dispute of material fact and summary judgment is warranted. *Id.*

With regard to Plaintiff's arguments about the facility's grievance process, Defendants argue that Plaintiff's complaints are generic and without detail. *Id.* Defendants note that although Plaintiff contends that he filled out two grievances and submitted a few documents, he does not provide any detail with regard to the content of the grievances, when he submitted them, or his efforts to ensure the grievances were received and being addressed. *Id.* Defendants argue that Plaintiff's assertions are "too vague to relieve him of the exhaustion requirement or to establish that he tried yet was refused the opportunity to exhaust his administrative remedies." *Id.* Defendants note that, although there are three circumstances in which an administrative process is rendered "unavailable" and an inmate's failure to exhaust may be excused, an inmate's failure to exhaust his administrative remedies is not excused as "unavailable" where he cannot produce

5

evidence to support this contention. *Id., referencing Ratliff v. Graves*, 761 Fed. Appx. 565, 567-68 (6th Cir. 2019). Defendants acknowledge that Plaintiff submitted grievances during his incarceration at the facility but contend that they were not related to the allegations in this lawsuit, such that Plaintiff "has not presented evidence or even a reasonable argument to this Court to establish otherwise." *Id.* Defendants argue that Plaintiff's "generic contentions regarding exhaustion or regarding an attempt to exhaust are insufficient." *Id.* Defendants contend that because Plaintiff did not exhaust his administrative remedies against them for the allegations that comprise this lawsuit, they are entitled to a judgment as a matter of law. *Id.*

Finally, Defendants maintain that even if Plaintiff had responded to their Statement of Undisputed Facts and exhausted his administrative remedies, they would still be entitled to summary judgment because: (1) the officer Plaintiff contends sprayed him (Bangura) was not served with the Summons and Complaint and is therefore not properly a party to this lawsuit; (2) Plaintiff adduced no evidence to support his contention that Defendant Hill denied him proper recreational opportunities and the evidence establishes that he did not because he was an assistant shift supervisor who provided management and oversight within the restrictive housing units and other locations of the facility but was not responsible for providing recreation, did not deny recreation to Plaintiff, and did not instruct correctional officers to deny Plaintiff recreation; and (3) although Plaintiff contends that he suffered physical injury as a result of being sprayed by Officer Bangura, medical providers evaluated Plaintiff after the incident and documented that he suffered a cut to his middle finger and some redness and swelling to his right eye, which fails to establish the requisite severity of physical injury. *Id.* Accordingly, Defendants contend that their Motion should be granted. *Id.*

## IV.  Undisputed Facts[2]

### A.  Declaration of Raymond Byrd

Raymond Byrd is an employee of CoreCivic of Tennessee, LLC,[3] who previously served as the Warden at the Trousdale Turner Correctional Center ("Trousdale"). Docket No 30, Declaration of Raymond Byrd ("Byrd Dec."), ¶ 1. CoreCivic, Inc. operates Trousdale pursuant to a contract with the Tennessee Department of Correction ("TDOC") and CoreCivic of Tennessee, LLC employs certain individuals who work at Trousdale. *Id.*, ¶ 3.

Mohamed Bangura was an employee of CoreCivic and previously served as a correctional officer at Trousdale. *Id.*, ¶ 4.

On February 23, 2021, Officers Bangura and Campbell were conducting security rounds in Unit Echo Alpha when they stopped to address various violations, including window violations. *Id.*, ¶ 5, Exhibit A. The individual cell doors at Trousdale have windows, and CoreCivic policy prohibits inmates from covering the windows because it presents an obvious security issue preventing security personnel from monitoring the activity inside the individual cells. *Id.* Plaintiff became defiant and verbally aggressive during the security rounds, so Officers Bangura and Campbell repeatedly issued verbal directives to Plaintiff to stand down and step back. *Id.* Plaintiff refused and made an aggressive move toward Officer Bangura, so Officer Bangura appropriately deployed one burst of chemical spray in Plaintiff's direction. *Id.* Officer Bangura did not douse Plaintiff with the chemical spray and certainly did not "soak" Plaintiff's clothing in the chemical spray or cause Plaintiff to bleed. *Id.* The chemical spray did not stop Plaintiff as Plaintiff rushed

---

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.
[3] CoreCivic, Inc. and CoreCivic of Tennessee, LLC are collectively referred to as "CoreCivic." *Id.*, ¶ 3.

Officer Bangura while other inmates joined in the physical assault of Officers Bangura and Campbell by punching and striking them. *Id.* The inmates were able to strip Officers Bangura and Campbell of their radios and were also able to strip Officer Bangura of his chemical spray. *Id.* Officers Bangura and Campbell recovered, exited the housing unit, and called for assistance. *Id.* The Emergency Response Team arrived and ultimately quelled the disturbance the inmates caused. *Id.*

When an inmate acts in an aggressive and violent manner toward security personnel and refuses to adhere to instructions from security personnel, the inmate must be stopped because he can cause harm and can incite negative group activity. *Id.*, ¶ 6.

The documented conduct of security personnel who were involved in the February 23, 2021, incident recounted above aligned with TDOC Policy 506.08, The Use of Force, which provides, among other things, that the level of force used may be "determined by the person's actions, behavior, level of resistance, and the circumstances of the interaction." *Id.*, ¶ 7. It also provides that the appropriate level of force may be used "to stop and control the offender's inappropriate, unlawful, or dangerous behavior(s)" and that "progressively more restrictive and severe use of force or control measures will be used [when] less restrictive and less severe measures have failed or proven ineffective or are reasonably believed to be incapable of controlling the situation." *Id.* The conduct also aligned with CoreCivic training regarding the use of force, which acknowledges that reasonable and necessary force may be used to protect self and others and to maintain or restore order and security. *Id.*

The documented conduct of the security personnel who were involved in the February 23, 2021, incident recounted above further aligned with the policies and positions that Warden Byrd

8

espoused as the Warden at Trousdale. *Id.*, ¶ 8.[4] Warden Byrd did not implement a policy of using chemical spray during inmate encounters, regardless of whether the inmate was "combative in any way." *Id.* Nor did any other CoreCivic employee. *Id.* Rather, Warden Byrd educated security personnel on, and enforced, the aforementioned CoreCivic policies and CoreCivic training. *Id.*

Following the incident on February 23, 2021, medical personnel evaluated security personnel. *Id.*, ¶ 9. They documented facial abrasions and ultimately sent security personnel to the emergency department for further evaluation. *Id.*

Medical providers at Trousdale also evaluated Plaintiff and documented that Plaintiff had a cut on the middle finger of his left hand and suffered from some redness and swelling to his right eye. *Id.*, ¶ 10. Plaintiff did not require any additional medical treatment, and medical providers noted that Plaintiff was alert and oriented and did not experience any acute distress. *Id.* Plaintiff stated to medical personnel, "I got sprayed. I don't remember anything else." *Id.*

The training that CoreCivic employees undergo is extremely robust. *Id.*, ¶ 11. All CoreCivic employees must complete a minimum of 40 hours of orientation before undertaking their assignments. *Id.* In addition to orientation, all new custody personnel must complete a minimum of 120 hours of custody training and an additional 40 hours of on-the-job training. *Id.* Along with this training, custody personnel subsequently must complete a minimum of 40 hours of training each calendar year. *Id.* The training is designed and intended to ensure that CoreCivic employees are prepared for the many functions that they perform in the corrections environment and ultimately is intended to ensure the safety and security of inmates, employees, and the greater public. *Id.*

---

[4] The Incident Report and two Incident Statements regarding the February 23, 2021, incident with Plaintiff are submitted as Exhibit A. *Id.*, ¶ 5.

9

The training is also designed and intended to educate CoreCivic employees concerning the rights of inmates, including the right to recreational opportunities. *Id.*, ¶ 12. Employees are trained that inmates located in the restrictive housing unit must receive at least one hour of recreation five days every week. *Id.* This mandate is located within CoreCivic policies and post orders, and likewise is reinforced through the training that CoreCivic employees receive at the outset of their employment and throughout the years of their employment. *Id.*

### B. Declaration of Emond Hill

Emond Hill was an employee of CoreCivic and previously served as an assistant shift supervisor at Trousdale. Docket No. 31, Declaration of Emond Hill ("Hill Dec."), ¶ 1.

Correctional officers were assigned to the restrictive housing unit where Plaintiff was located and they were responsible for monitoring the inmates, meeting the needs of the inmates, and providing recreation to the inmates, among other things. *Id.,* ¶ 3. Defendant Hill served as an assistant shift supervisor during the relevant timeframe, not as a correctional officer, and therefore provided management and oversight within all the restrictive housing units and within other locations of the facility. *Id.* He was not responsible for providing recreation to inmates, including Plaintiff. *Id.* Defendant Hill did not deny recreation to Plaintiff, nor did he instruct any correctional officer to deny him recreation. *Id.*

### C. Declaration of Elizabeth Lopez

Elizabeth Lopez is an employee of CoreCivic and serves as the Grievance Coordinator at Trousdale. Docket No. 32, Declaration of Elizabeth Lopez ("Lopez Dec."), ¶ 1. CoreCivic's administrative grievance system enables inmates at Trousdale to seek redress for issues relating to the conditions of their confinement. *Id.,* ¶ 3.

Policy 501.02, Inmate Grievance Procedures, provides that the processing of a standard

inmate grievance at Trousdale proceeds as follows:

First Level: An inmate must file a grievance using CR-1394 within seven calendar days of the occurrence or the most-recent occurrence giving rise to the grievance. The chairperson will review the grievance and log the grievance as received. The chairperson's response to the grievance will be written on the CR-1394 following the chairperson's receipt and review of the supervisor's response. The chairperson and the supervisor have seven working days to complete the response, which begins on the day that the grievance begins to be processed. If the inmate accepts the response, it will be documented on CR-3148.

Second Level: Within five calendar days of being notified of the Level One response, the inmate may appeal the response to the grievance committee and the warden. A hearing will take place within five working days of the appeal's filing. Within five working days of the hearing, the grievance committee's proposed response will be documented on the CR-1393 and will be forwarded to the warden. Within seven working days of receipt, the warden will forward his or her decision to the chairperson. Within five working days of receiving the warden's response, the chairperson will allow the inmate to review the grievance materials and response. If the inmate accepts the response, the chairperson will enter the approval on the grievance.

Third Level: An inmate may appeal the Level Two response within five calendar days of receipt of the response. The chairperson will forward one copy of the grievance and all documentation to the deputy commissioner of operations or his or her designee. The Level Three response will be sent to the chairperson for distribution within twenty-five working days of the date the appeal was received. The chairperson will enter the final decision on the grievance. This response is final and is not subject to appeal.

*Id.*, ¶ 4.

Plaintiff filed and exhausted two grievances between February 23, 2021, and May 24, 2021: the first, on March 30, 2021, and the second, on April 1, 2021; neither of which made any mention of the allegations of this lawsuit. *Id.,* ¶ 5, *referencing* Exhibits B and C. In particular, Plaintiff's March 30, 2021, grievance complained that when he was placed into the restrictive housing unit, Lt. Hill did not provide him with all of his property for discriminatory purposes. *Id.*, *referencing* Exhibit B. Plaintiff's April 1, 2021, grievance complained that he did not receive clean clothing, hygiene items, his property, or a shower for a period of time while in restrictive housing

for discriminatory purposes. *Id.*, *referencing* Exhibit C.

On September 14, 2021, after the filing of the instant action, Plaintiff filed, but did not exhaust, a grievance complaining that he only received two days of recreation each week. *Id.*, ¶ 6, *referencing* Exhibit D.

Plaintiff submitted a grievance with his Complaint but did not actually submit that grievance to CoreCivic. *Id.*, ¶ 7. If he had, the grievance would contain a grievance number, the date received, and a signature of the grievance clerk, and CoreCivic personnel would have responded to the grievance. *Id.*

## V.    LAW AND ANALYSIS

### A.    Local Rule 56.01(c)

Regarding responses to the requisite Statement of Undisputed Facts filed contemporaneously in support of a Motion for Summary Judgment, Local Rule 56.01(c) states:

> **(c)    Response to Statement of Facts**. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> (1) Agreeing that the fact is undisputed;
>
> (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
>
> (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record.
>
> The response must be made on the document provided by the movant or on another document in which the non- movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. Such response must be filed with the papers in opposition to the motion for summary judgment. In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact must be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

12

A copy of the statement of additional disputed facts must also be provided to opposing counsel in an editable electronic format. Pro se parties are excused only from providing a copy of the statement of additional disputed material facts to opposing counsel in an editable electronic format, and such pro se parties must otherwise comply with the requirements of this section.

Local Rule 56.01(c).

As discussed above, while Plaintiff has filed a Response to Defendants' Motion, he has not filed a Response to Defendants' Statement of Undisputed Facts despite this Court's warning that his failure to respond to a statement of facts in the manner outlined by the Court "may result in the Court taking the facts alleged in the matter as true and granting the relief requested." Pursuant to the Federal and Local Rules, Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

**B.      Motion for Summary Judgment**

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F. 3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

13

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

**(c) Procedures.**

**(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**C.      42 U.S.C. § 1983**

**1.      Generally**

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a §1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

## 2. Eighth Amendment

The Eighth Amendment provides that:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed.

2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

### D. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F. 3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F. 3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F. 3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F. 3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies . . . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether the plaintiff's claims have been

16

brought with respect to "prison conditions" as that term is used in 42 U.S.C. §1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U. S. C. §1997e(a) in *Freeman v. Francis*, 196 F. 3d 641 (6th Cir. 1999). In *Freeman*, the plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, the plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of §1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in §1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. §3626(g)(2), which was amended as part of the same legislation as §1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places.
>
> . . .
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F. 3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S. Ct. 983, 986 (2002). As the *Porter* Court stated:

17

Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

. . .

For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S. Ct. at 988, 992 (citations omitted, emphasis added).

### E.    The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in §1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

It is undisputed that CoreCivic has an administrative grievance system of which Plaintiff knew and utilized. Lopez Dec., ¶¶ 3-6; Exhibits B, C, D. It is also undisputed that Plaintiff filed, and exhausted, grievances on March 30, 2021, and April 1, 2021, and that neither of these exhausted grievances related to Plaintiff's pending Eighth Amendment vicarious liability claim against CoreCivic, Eighth Amendment conditions of confinement deprivation of recreation claim against Defendant Hill, or Eighth Amendment failure to train claim against CoreCivic. *Id.*

While it is undisputed that Plaintiff did file a grievance related to his lack of recreation time, it is also undisputed that Plaintiff filed said grievance on September 14, 2021, *after* he filed the instant action. *Id.*, ¶ 6. The filing of this grievance *after* filing the instant action does not constitute exhaustion under the PLRA because exhaustion is a prerequisite—a condition precedent—to filing this suit. *Mattox v. Edelman*, 851 F. 3d 583, 592 (6th Cir. 2017).

18

It is also undisputed that Plaintiff submitted a grievance with his Complaint but did not submit that grievance to anyone at Trousdale or CoreCivic, because if he had, the grievance would contain a grievance number, the date received, and the signature of the grievance clerk, and CoreCivic personnel would have responded. Lopez Dec., ¶7. Because it was never submitted to anyone at Trousdale or CoreCivic and did not proceed through the grievance process to exhaustion, Plaintiff's submission of this grievance with his Complaint likewise does not satisfy the exhaustion requirement of the PLRA.

In light of the foregoing, it is undisputed that Plaintiff did not exhaust his administrative remedies with regard to the claims now before the Court. Plaintiff's failure to exhaust his administrative remedies as required by the PLRA is fatal to his claims and Defendants are entitled to a judgment as a matter of law.

Even if Plaintiff had exhausted his administrative remedies, however, Defendants would nevertheless remain entitled to a judgment as a matter of law on Plaintiff's Eighth Amendment vicarious liability claim against CoreCivic because 42 U.S.C. §1983 does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978); *Street v. Corrections Corp. of America*, 102 F. 3d 810, 818 (6th Cir. 1996).

Plaintiff attempts to hold CoreCivic vicariously liable for Officer Bangura's alleged actions by averring that Warden Byrd implemented a policy of using chemical spray during inmate encounters, regardless of whether the inmate is combative in any way, but to hold CoreCivic liable for the alleged constitutional deprivations allegedly committed by Officer Bangura, Plaintiff must show that those deprivations occurred pursuant to an official policy or a pervasive, widespread custom of CoreCivic, and that said policy or custom was the "moving force" behind the alleged

19

constitutional deprivations of which Plaintiff complains. *Kentucky v. Graham*, 473 159, 165-66 (1985). Plaintiff has failed to do so, because it is undisputed that neither Warden Byrd nor any other CoreCivic employee implemented a policy of using chemical spray during inmate encounters, regardless of whether the inmate was "combative in any way." Byrd Dec., ¶ 8. It is also undisputed that Warden Byrd's directives comported with TDOC Policy 506.08, The Use of Force, and that his directives aligned with Coercive training. *Id.*, ¶¶ 7-8. Moreover, it is undisputed that Warden Byrd educated security personnel on, and enforced, said TDOC policy and CoreCivic training. *Id.* Accordingly, Plaintiff cannot hold CoreCivic liable for the alleged Eighth Amendment violation of Officer Bangura, and Defendants are entitled to a judgment as a matter of law on this claim.

Even if Plaintiff had properly exhausted his administrative remedies, he likewise would be unable to sustain his Eighth Amendment conditions of confinement lack of recreation claim against Defendant Hill because the undisputed facts establish that Defendant Hill served as an assistant shift supervisor during the relevant timeframe, not as a correctional officer, and therefore provided management and oversight within all the restrictive housing units and within other locations of the facility, but was not responsible for providing recreation to inmates, including Plaintiff. Hill Dec., ¶3. And it is further undisputed that Defendant Hill did not deny recreation to Plaintiff, nor did he instruct any correctional officer to deny him recreation. *Id.* Moreover it is undisputed that CoreCivic employees are trained that inmates located in the restrictive housing unit must receive at least one hour of recreation five days every week, and that this mandate is located within CoreCivic policies and post orders and reinforced through the training that CoreCivic employees receive at the outset of their employment and throughout the years of their employment. Byrd Dec., ¶12. For these reasons, Plaintiff cannot sustain his denial of recreation claim against Defendant

20

Hill and Defendants are entitled to a judgment as a matter of law on this claim.

With regard to Plaintiff's Eighth Amendment failure to properly train claim against CoreCivic, Plaintiff would likewise be unable to sustain this claim even if he had exhausted his administrative remedies, because it is undisputed that CoreCivic employees undergo extremely robust training. Byrd Dec., ¶11. Specifically, it is undisputed that all CoreCivic employees must complete a minimum of 40 hours of orientation before undertaking their assignments, and that, in addition to orientation, all new custody personnel must complete a minimum of 120 hours of custody training and an additional 40 hours of on-the-job training, and along with this training, custody personnel subsequently must complete a minimum of 40 hours of training each calendar year. *Id.* It is further undisputed that the training is designed and intended to ensure that CoreCivic employees are prepared for the many functions that they perform in the corrections environment and ultimately is intended to ensure the safety and security of inmates, employees, and the greater public, and is also designed and intended to educate CoreCivic employees concerning the rights of inmates, including the right to recreational opportunities. *Id.*, ¶12. For these reasons, Defendants are entitled to a judgment as a matter of law on Plaintiff's Eighth Amendment failure to train claim against CoreCivic.

Finally, although Plaintiff argues otherwise, the PLRA does have a physical injury requirement; and although the physical injury does not need to be significant, it must be more than *de minimis. Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010). In the case at bar, it is undisputed that, after the February 23, 2021, incident at issue, Plaintiff was evaluated by medical providers at Trousdale who documented that Plaintiff had a cut on the middle finger of his left hand and suffered from some redness and swelling to his right eye. Byrd Dec., ¶10. It is further undisputed that Plaintiff did not require any additional medical treatment, and medical providers noted that

21

Plaintiff was alert and oriented and did not experience any acute distress. *Id.* Accordingly, Plaintiff is unable to establish that he suffered more than a *de minimis* physical injury and Defendants are entitled to a judgment as a matter of law.

## VI.  CONCLUSION

For the foregoing reasons, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies, as required by the PLRA.  The undersigned further finds that there are no genuine issues of material fact, and that Defendants are entitled to a judgment as a matter of law on Plaintiff's claims. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 27) be **GRANTED**, and that this action be **DISMISSED WITH PREJUDICE.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

22